**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILLIAM JOHN TESS,

Plaintiff,

v. Case No. 8:25-cv-3392-KKM-LSG

SPRINGFIELD, INC.,
SPRINGFIELD GUNS, INC., and
SPRINGFIELD ARMORY
HOLDINGS, INC.

Defendants.

---

# **ORDER**

Defendants Springfield Guns, Inc., and Springfield Armory Holdings, Inc., move to dismiss for lack of personal jurisdiction. Springfield Guns' MTD (Doc. 12) at 5–12; Springfield Holdings' MTD (Doc. 13) at 4–14. Springfield Guns moves on the additional ground that it lacks the capacity to sue or be sued. Springfield Guns at 12–14. The plaintiff, William John Tess, opposes both motions. Resp. to Springfield Guns (Doc. 38); Resp. to Springfield Holdings (Doc. 39). Defendant Springfield, Inc., answered Tess's complaint and does not object to personal jurisdiction. Springfield's Answer (Doc. 21). For the reasons below, I dismiss Springfield Guns and Springfield Holdings.

## I. BACKGROUND

Tess, a Florida citizen, alleges that he was severely injured when his Springfield Model 1911-A1 pistol unintentionally discharged. Compl. (Doc. 1-1) ¶¶ 1–2, 5, 39. Tess "customarily stored the [pistol] in its holster between his mattress and box spring," and, one night, "it became dislodged, fell to the floor, and discharged upon impact." *Id.* ¶ 40. The pistol fired one round, striking Tess "in the head, entering near his temple, passing through his skull, and exiting through the rear of his head." *Id.* ¶ 41. Tess survived but "endures lasting and life-altering physical and psychological impairments and disabilities." *Id.* ¶ 43.

Tess sued Springfield, Springfield Guns, and Springfield Holdings in state court, asserting negligence, strict-liability, and breach-of-warranty claims. *Id.* ¶¶ 39–47. He alleges that all defendants were engaged in the "design, engineering, manufacturing, importing, assembling, testing, inspecting, marketing, advertising, distributing, supplying, and/or selling" of firearms, including the pistol that harmed him, *id.* ¶¶ 4–5 (Springfield), 6–7 (Springfield Guns), 8–12 (Springfield Holdings), and that they "placed" this pistol "into the stream of commerce," *id.* ¶¶ 4–5, 9–10, 12–13, 23–25, after it "was manufactured in or around 2017," *id.* ¶ 38. He further alleges that Springfield Guns and Springfield Holdings "operated, conducted, engaged in, or carried on business, a business venture, and/or a joint venture with Springfield within the State of Florida." *Id.* ¶ 24.

Springfield, an Illinois corporation, admits that it is engaged in the firearms business but denies "that a Springfield firearm was involved in the alleged incident." Springfield's Answer ¶¶ 4–5; Compl. ¶ 3. Springfield Guns and Springfield Holdings both deny that they, at times relevant to Tess's claims, were "involved with, participated in, or made any decisions relating to the design, engineering, manufacturing, assembly, testing, inspection, marketing, advertising, importation, distribution, supply, or placement into the stream of commerce of [Springfield's] products, including the" pistol that harmed Tess. *See* Springfield Guns' MTD at 3 (citing Spencer Decl. (Doc. 12-1) ¶ 5); Springfield Holdings' MTD at 3 (citing Bowen Decl. (Doc. 13-1) ¶ 6). They also deny that they ever transacted business, owned property, employed anyone, maintained an office, or operated as a joint venture with Springfield in Florida. Springfield Guns' MTD at 3 (citing Spencer Decl. ¶¶ 7–10); Springfield Holdings' MTD at 3 (citing Bowen Decl. ¶¶ 8–11).

Because Springfield Guns and Springfield Holdings challenge Tess's allegations, Tess was permitted to conduct jurisdictional discovery. (Docs. 40, 46). Jurisdictional discovery revealed the following details about Springfield Guns and Springfield Holdings.

Springfield Guns, a Delaware corporation with its principal address in Illinois, formed in 1976 as Springfield Armory, Inc. Compl. ¶ 6; Spencer Dep. (Doc. 60-1) 26:3–5. From 1976 to 1992, Springfield Armory, Inc., designed,

manufactured, and distributed firearms, including Series 1911 pistols. *See* Spencer Dep. 51:6–54:14, 60:22–61:6, 62:3–64:14. In 1992, Springfield Armory, Inc., sold all its assets to Springfield. *Id.* Afterward, Springfield Armory, Inc., continued to exist but conducted no business. *Id.* at 53:2–19. In 2006, Springfield Armory, Inc., amended its articles of incorporation to change its name to Springfield Guns for potential future use. *Id.* Springfield Guns ultimately dissolved on February 12, 2016. *Id.*; *see* Spencer Decl. ¶ 3–4; Compl. ¶ 36 (acknowledging that Springfield Guns dissolved "in or about 2016").

Springfield Holdings, a Delaware corporation with its principal address in Illinois, formed in 2014 and is the sole shareholder and 100% owner of Springfield. Compl. ¶ 8; Bowen Dep. (Doc. 60-2) 62:16–63:19. Springfield Holdings does not receive dividends or distributions from Springfield, Bowen Dep. at 61:14–62:15, maintain separate bank accounts from Springfield, *id.* at 61:11–13, file its own tax returns, *id.* at 85:23–86:13, hold regular meetings with minutes, *id.* at 120:25–121:4, or have any "assets" or "activity," *id.* at 111:8–17. In fact, Springfield Holdings' wholly owned subsidiary, Springfield, pays all its dividends and distributions to the two entities' beneficial owners, Dennis Reese and the Dennis J. Reese Trust. *Id.* at 61:14–62:15. Reese is the Chief Executive Officer of Springfield and a director of both Springfield and Springfield Holdings. *Id.* at 39:19–40:12, 121:5–122:4, 144:22–24.

## II. LEGAL STANDARDS

A defendant may move to dismiss a claim for relief under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. A plaintiff attempting to exert personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If a defendant submits an affidavit disputing the plaintiff's allegations, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Where factual conflicts exist, "the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## III. ANALYSIS

Tess alleges several potential bases for personal jurisdiction over Springfield Guns and Springfield Holdings. *See* Compl. ¶¶ 10–13, 18–28. In turn, Springfield Guns and Springfield Holdings submit declarations contesting Tess's allegations. *See generally* Springfield Guns' MTD; Springfield Holdings' MTD; Spencer Decl.; Bowen Decl. No evidentiary hearing has been held, *see* (Doc. 91), so I construe all reasonable inferences in Tess's favor.

Having done so, I dismiss without prejudice the claims against Springfield Guns and Springfield Holdings.

Federal courts ordinarily use a two-step inquiry to determine whether personal jurisdiction exists over a nonresident defendant. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). First, the court must "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Id.* (quoting *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). Second, if jurisdiction is appropriate under state law, the court must ensure that exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See id.* (citing *Mut. Serv. Ins. Co.*, 358 F.3d at 1319).

As an alternative to the two-step approach, "a plaintiff may establish personal jurisdiction under a piercing-the-corporate-veil theory," in which case a court "may exercise jurisdiction where the non-resident corporation is merely the alter ego of the resident entity." *K3 Enters., Inc. v. Sasowski*, No. 20-24441-CIV, 2021 WL 8363506, at *3 (S.D. Fla. Nov. 22, 2021) (quoting *Gubanova v. Miami Beach Owner, LLC*, No. 12-22319-CIV, 2013 WL 6229142, at *3–4 (S.D. Fla. Dec. 2, 2013)).

"Long-arm jurisdiction under section 48.193 [of the Florida Statutes] may be established in one of two ways: 'general' jurisdiction or 'specific' jurisdiction." *Pipistrel d.o.o. v. Ciccolini*, 400 So. 3d 665, 670 (Fla. 3d DCA

2024) (quoting *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1132 (Fla. 3d DCA 2018)); *see Bristol-Myers Squibb Co. v. Sup. Ct. of Calif.*, 582 U.S. 255, 262 (2017). General, or "all-purpose," jurisdiction is proper in the forum in which the defendant "is fairly regarded as at home." *Bristol-Myers Squibb*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tire Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Specific, or "case-linked," jurisdiction is "very different." *Id.* It applies only when the suit "arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation modified). The parties agree that general jurisdiction does not apply, so I examine whether Springfield Guns and Springfield Holdings are subject only to specific jurisdiction.

A court applying Florida law "may exercise 'specific' jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from the enumerated act committed in Florida." *Pipistrel*, 400 So. 3d at 670 (quoting *Banco de los Trabajadores*, 237 So. 3d at 1133). The " 'arising from' prong," also known as the connexity requirement, demands that "there be a 'nexus' or 'substantial connection' between the cause of action and the defendant's activities within the state." *Samsung SDI Co., Ltd. v. Fields*, 346 So. 3d 102, 106 (Fla. 1st DCA 2022); *see also Camp Illahee Investors, Inc. v. Blackman*, 870 So. 2d 80, 85 (Fla.

2d DCA 2003) ("By its terms, section 48.193(1) requires connexity between the defendant's activities and the cause of action." (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)).

### A. Springfield Guns Is Not Subject to Personal Jurisdiction

Tess contends that Springfield Guns is subject to personal jurisdiction based on its intentional conduct in the design and manufacture of Series 1911 pistols. Pl.'s Suppl. Br. (Doc. 63) at 2. Tess alleges that Springfield Guns (1) "operated, conducted, engaged in, or carried on business or a business venture within the State of Florida," (2) "committed tortious acts within the State of Florida," and (3) "caused injury to persons within the State of Florida" both "while engaged in solicitation or service activities within [the] State" and "arising out of acts or omissions committed outside this State, while products, materials, or things processed, serviced, or manufactured by [it] in Illinois and elsewhere were used or consumed within [Florida] in the ordinary course of commerce, trade, or use." Pl.'s Resp. to Springfield Guns (Doc. 38) at 11–12 (citing Compl. ¶¶ 27.a–d) (invoking §§ 48.193(1)(a)(1), 48.183(1)(a)(2), 48.193(1)(a)(6), Fla. Stat.). Springfield Guns argues that personal jurisdiction is improper because it lacked sufficient contacts with Florida at any time relevant to Tess's complaint. *See* Springfield Guns' MTD at 2–3. Because Springfield Guns has not engaged in the firearm business since 1992 and Tess

was injured by a firearm manufactured in 2017, I agree that Springfield Guns is not subject to personal jurisdiction in this case.

Each of Tess's alleged bases for personal jurisdiction over Springfield Guns fails because the record does not support a reasonable inference that Tess's cause of action and Springfield Guns are substantially connected. *See Samsung SDI*, 346 So. 3d at 106; *Camp Illahee Investors*, 870 So. 2d at 85. Although Tess alleges that he was injured in December 2023 and that the pistol that harmed him was manufactured in 2017, Compl. ¶¶ 38–39, he does not dispute that Springfield Guns "transferred the entirety of its firearm business to defendant Springfield" in 1992 and ceased to exist in 2016, Joint Statement of Undisputed Facts (JSUF) (Doc. 82) ¶¶ 2–3, 5. More, Springfield Guns provides evidence that it has not had any operations at all, in Florida or otherwise, since 1992, Spencer Dep. 52:21–54:4, which Tess fails to rebut. Any nexus between Tess's cause of action and Springfield Guns' contacts with Florida is therefore far too attenuated to justify specific jurisdiction. *See Samsung SDI*, 346 So. 3d at 108 (holding that a nineteen-month period between the defendant's sale of products in Florida and the plaintiff's injury was insufficient to establish personal jurisdiction under § 48.193(1)(a)(6), Fla. Stat.).

Tess's arguments to the contrary are unpersuasive. He first attacks Springfield Guns' representations that it was "created solely to hold the trade

name 'Springfield Guns'" and that it "never designed, manufactured, assembled, marketed, or sold the [pistol that harmed Tess]." Pl.'s Suppl. Br. at 3. Although Springfield Guns might not have been created to hold this tradename, this fact is irrelevant to any conduct connected to Tess's injury. At most, it bolsters the undisputed fact that Springfield Guns was once engaged in the firearms business.

Tess also points out that Springfield "became the 'successor entity' to Springfield Guns" and "took over Springfield Guns' patents . . . and its entire business operations related to the design, manufacturing, marketing and sale of firearms and all of its assets, including manufacturing equipment, inventory, and employees." Pl.'s Suppl. Br. at 3. Tess adds that "[c]onsideration for the transfer of these assets and business operations has not been identified" and that "[o]wners and officers . . . were on both sides of this transaction." *Id.* (citing Bowen Dep. 25:3–10, 37:23–38:21). But Tess does not explain how these facts bear on the jurisdictional analysis or cite any cases that hint at his legal theory. Notably, Tess does not meaningfully argue that Springfield Guns is Springfield's alter ego. *Cf.* Pl.'s Suppl. Br. at 8 (explicitly arguing that Springfield Holdings is Springfield's alter ego).[1]

---

[1] Tess alleges conclusory facts that Springfield Guns is Springfield's alter ego, *see* Compl. ¶ 25, but he does not pursue this theory in his papers.

Next, Tess tries to support his allegation "that Springfield Guns engaged in the marketing and sale of firearms throughout the United States, including Florida," Pl.'s Suppl. Br. at 4 (citing Compl. ¶¶ 34–36), with evidence that Springfield's CEO has continuously used the "Springfield Armory" brand name publicly, *id.* (citing Ex. O (Doc. 63-15); Bowen Dep. 141:1–12), and acknowledged Springfield's "status as the successor, heir, or assignee of Springfield Guns in judicial filings," *id.* (citing Ex. P (Doc. 63-16), Ex. Q (Doc. 63-17)). Again, these facts do not establish a nexus between Springfield Guns' actions and Tess's injury.

Finally, Tess argues that personal jurisdiction over Springfield Guns is proper because it was aware of a relevant safety defect "from at least 1937 onward" and a reasonable alternative design "from 1983 onward." *Id.* at 4–5 (citing Compl. ¶¶ 49, 51). Specifically, Tess says that, "[f]rom at least 1983 to [1992], Springfield Guns intentionally failed to incorporate a firing-pin safety to address the [s]afety [d]efect," so "Springfield Guns caused [Tess]'s injury in Florida." *Id.* (citing Compl. ¶ 53). But, taking these allegations as true, the record does not support the inference that Springfield Guns' alleged tort occurred in Florida. *See Samsung SDI*, 346 So. 3d at 106 ("The [long-arm statute] necessarily focuses analysis not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred." (quoting *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013)). In fact, the

record shows that Springfield Guns has not conducted any activities in Florida (or elsewhere) since 1992. *See* JSUF ¶¶ 2–3, 5. Similarly, the record does not support the conclusion that, "at or about the time of [Tess]'s injury," Springfield Guns "was engaged in solicitation or service activities" in Florida or that "[p]roducts, materials, or things processed, serviced, or manufactured by [Springfield Guns] were used or consumed within [Florida] in the ordinary course of commerce, trade, or use." § 48.193(1)(A)(6), Fla. Stat. To be sure, Springfield Guns ceased its firearms business in 1992, long before the pistol was manufactured in 2017 and Tess was injured in 2023, *see* Compl. ¶¶ 38–39.

In any event, because Tess does not establish connexity between his injury and Springfield Guns' conduct, personal jurisdiction over Springfield Guns is not proper under Florida's long-arm statute.

### B. Springfield Holdings Is Not Subject to Personal Jurisdiction

Tess claims that personal jurisdiction over Springfield Holdings is proper because it took part in the acts that caused his injury, Compl. ¶¶ 10, 24–25, 27, and is Springfield's alter ego, *id.* ¶¶ 11, 25. Springfield Holdings argues that it is not subject to jurisdiction because it had no contacts with Florida from which Tess's claims arise, Springfield Holdings' MTD at 10, and because Springfield's contacts cannot be imputed to Springfield Holdings under the

veil-piercing form of alter-ego jurisdiction, *id.* at 12–14. I agree with Springfield Holdings.

A parent corporation is not subject to personal jurisdiction in Florida merely because its subsidiary does business here. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925)). A parent and subsidiary are presumptively separate entities, so a subsidiary's contacts cannot automatically be attributed to its parent. *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022). Instead, a "plaintiff may establish personal jurisdiction of [an] upstream, nonresident parent" by showing (1) "that the non-Florida parent company independently satisfies the test for jurisdiction under Florida's long-arm statutes," (2) "facts that justify piercing the corporate veil," or (3) "that the parent exercises sufficient control over the subsidiary to render the subsidiary an agent or alter ego of the parent," so long as "[t]he amount of control exercised by the parent [is] high and very significant." *Id.* (quoting *Schwartzberg v. Knobloch*, 92 So. 3d 173, 182 (Fla. 2d DCA 2012)); *see also* § 48.193(1)(a)(6)(b), Fla. Stat. I address each basis in turn.

**i. Independent Satisfaction**

A parent corporation may be subject to specific personal jurisdiction based on its own contacts with Florida. *See Knepfle*, 48 F.4th at 1292. As discussed above, specific jurisdiction is proper under Florida's long-arm statute

only when the defendant commits an enumerated act from which the plaintiff's cause of action arises. *See Pipistrel*, 400 So. 3d at 670 (quoting *Banco de los Trabajadores*, 237 So. 3d at 1133).

Tess alleges that Springfield Holdings (1) "operated, conducted, engaged in, or carried on a business or a business venture within the State of Florida," (2) "committed tortious acts within the State of Florida," and (3) "caused injury to persons within the State of Florida" both "while engaged in solicitation or service activities within [the] State" and "arising out of acts or omissions committed outside [the] State, while products, materials, or things processed, serviced, or manufactured by [it] in Illinois and elsewhere were used or consumed within [Florida] in the ordinary course of commerce, trade, or use." Compl. ¶ 27; *see also id.* ¶¶ 24–25 (operating a business in Florida); *id.* ¶¶ 10, 23 (placing a product into the stream of commerce). At the same time, Tess maintains that "Springfield Holdings, Inc. has no assets or operations" and "does not engage in corporate activity and does not maintain corporate assets." Joint Prehearing Report (Doc. 90) at 15 ¶¶ 24–25; *see* Bowen. Dep. 85:18–20, 111:8–17.

Because Springfield Holdings has never had operations or engaged in corporate activity, Tess cannot show that any of the long-arm statute's listed acts applies to Springfield Holdings. *See* § 48.193(1)(a), Fla. Stat. The record does not support any reasonable inference that Springfield Holdings carried on

business or a business venture in Florida, committed a tortious act in Florida, or injured anyone in Florida while soliciting or through products it manufactured.

More, Tess cannot show connexity between his injury and Springfield Holdings' mere existence as a "shell." *See* Pl.'s Suppl. Br. at 7 (characterizing Springfield Holdings as a shell). This alone is dispositive. *See Banco de los Trabajadores*, 237 So. 3d at 1136 (declining to evaluate whether the defendant's alleged Florida activities satisfied an enumerated act because the plaintiff failed to establish connexity); *see also Samsung SDI*, 346 So. 3d at 107 (finding no connexity); *Karnas v. Cuban*, No. 22-cv-22538, 2025 WL 3759241, at *6 (S.D. Fla. Dec. 30, 2025) (same).

**ii. Piercing the Corporate Veil**

The veil-piercing form of alter-ego jurisdiction is a "limited exception to the general, two-step process for establishing long-arm jurisdiction" in Florida. *See Parisi v. Quadri de Kingston*, 314 So. 3d 656, 664 (Fla. 3d DCA 2021). Under this exception, "a nonresident shareholder of a resident corporation may be subject to long-arm jurisdiction" where the demanding standard for disregarding the corporation's separate identity is met. *See Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998) (citations omitted). "Shareholders include . . . parent companies who own their subsidiaries." *Molinos Valle Del Ciabo, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir.

2011) (quoting *17315 Collins Ave., LLC v. Fortune Dev. Sales Corp.*, 34 So. 3d 166, 168 (Fla. 3d DCA 2010)).

Veil piercing is warranted only if "the corporation is a 'mere instrumentality' or alter ego of the [shareholder] defendant, *and* [] the [shareholder] defendant engaged in 'improper conduct' in the formation or use of the corporation." *See Bellairs*, 716 So. 2d at 323 (citation omitted). In some Florida District Courts of Appeal, the plaintiff must also show that the improper conduct caused the plaintiff's injury. *See Parisi*, 314 So. 3d at 664 (citing *BEO Mgmt. Corp. v. Horta*, 314 So. 3d 434, 436–37 (Fla. 3d DCA Nov. 18, 2020)); *Sifaco Group, S.A. v. Margioukla*, No. 4D2025-2497, 2026 WL 2035452, at *8 n.3 (Fla. 4th DCA July 15, 2026); *cf. Molinos Valle Del Cibao*, 633 F.3d at 1349 (11th Cir. 2011) (applying an identical test in the liability context).

Tess does not allege or argue that Springfield Holdings, as Springfield's parent corporation and sole shareholder, dominates and controls Springfield or that Springfield's corporate form was used for an improper purpose. Instead, Tess alleges that "Springfield Holdings . . . was [] owned, managed, operated, dominated, financed, directed, or controlled by . . . Defendant[] Springfield" during the relevant time period," Compl. ¶ 11, and argues that Springfield Holdings was Springfield's "mere instrumentality" and was formed for an improper purpose, Pl.'s Suppl. Br. at 6.

Tess's argument misapprehends Florida's standard for veil-piercing based on alter-ego jurisdiction. The alter-ego exception permits exercising jurisdiction over a nonresident defendant who controls a resident defendant. *See K3 Enters.*, 2021 WL 8363506, at *5 ("[T]he alter ego theory applies when a non-resident defendant *controls* a resident defendant." (emphasis altered)). Tess has it backward, arguing for a reverse alter-ego theory that a court may exercise jurisdiction over a nonresident defendant who is *controlled by* another defendant.

Tess does not cite, and I am not aware of, any cases in which a Florida court exercised personal jurisdiction over a nonresident defendant based on a reverse alter-ego theory.[2] Tess cites only *Garcia v. Character Technologies, Inc.*, 785 F. Supp. 3d 1157 (M.D. Fla. 2025), and *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-Orl-78GJK, 2020 WL 6734402, as support. Pl.'s Suppl. Br. at 5. But those cases both involved a conventional alter-ego argument in which a nonresident defendant allegedly controlled a resident defendant. *See*

---

[2] Although Florida law recognizes reverse veil piercing for corporate liability, *see* 8A FLA. JURIS. 2D BUS. RELS. § 14 (citing *In re Trujillo*, 626 B.R. 59 (Bankr. S.D. Fla. 2019)), I am unaware of any case extending the reverse alter-ego theory to the jurisdictional context, *see Noah Techs., Inc. v. Rice*, No. 2:14-cv-325-FtM-29DNF, 2014 WL 6473664, at *6 (M.D. Fla. Nov. 18, 2014)) ("While Plaintiffs are correct that Florida courts have applied the 'reverse alter ego' theory to pierce the corporate veil in non-jurisdictional contexts, . . . Plaintiffs do not cite, and the Court is not aware of, any cases in which the reverse alter ego theory has been applied to assert jurisdiction over a non-resident corporation via a resident individual." (citation and emphasis omitted)).

*Garcia*, 785 F. Supp. 3d at 1171 (declining to exercise jurisdiction over nonresident individuals based on a resident corporation's jurisdiction); *Classic Soft Trim*, 2020 WL 6734402, at *4 ("To plead jurisdiction sufficiently under an alter-ego theory, the plaintiff must show that the *subsidiary* is a 'mere instrumentality' of the *parent* company and that the *parent* engaged in 'improper conduct' in forming or using the *subsidiary*." (quoting *Bellairs*, 716 So. 2d at 323 (emphasis added)). They did not concern a nonresident defendant who is allegedly controlled by a defendant who is subject to jurisdiction.

Nor does Tess support the proposition that a court may exercise personal jurisdiction over a nonresident based on another nonresident's contacts with Florida. Springfield Holdings argues that doing so is unprecedented, *see* Defs.' Reply in Supp. of MTD (Doc. 44) at 8 (citing *Medlink Legal Sys., LLC v. QIMA Ltd.*, 794 F. Supp. 3d 1265, 1274–75 (S.D. Fla. 2025); *Noah Techs.*, 2014 WL 6473664, at *6), and Tess does not address this argument in his later-filed supplemental briefing, *see generally* Pl.'s Suppl. Br. at 5–8. I am aware of no cases supporting Tess's theory, and several federal district courts applying Florida law have rejected it. *See Noah Techs.*, 2014 WL 6473664, at *6 ("Nor is the Court aware of any cases holding that the Florida resident required for alter-ego jurisdiction may be replaced by a non-resident who is only within Florida's jurisdiction via a separate application [of] Florida's long-arm statute."); *K3 Enters.*, 2021 WL 8363506, at *5 (concluding that the plaintiff's

theory under which the court "would exercise personal jurisdiction over [ ] non-resident defendant corporations based on a non-resident defendant's contacts with Florida" "lacks support under Florida law"); *Medlink*, 794 F. Supp. 3d at 1274 ("[The plaintiff's] alter ego theory of personal jurisdiction fails because there is no resident entity."). Tess's alter-ego arguments thus fail at the threshold because he does not support the proposition that a nonresident defendant can be subject to personal jurisdiction based on the contacts of another nonresident defendant who controls it.

But even if Tess's novel reverse alter-ego theory had merit, he fails to show that Springfield (1) dominated and controlled Springfield Holdings and (2) used Springfield Holdings for a fraudulent or improper purpose.[3]

First, Tess has made an initial showing that Springfield dominates and controls Springfield Holdings. The record establishes that the two have common beneficial ownership and some common directors who are compensated only by Springfield. *See* Bowen Dep. 6:9–7:6, 121:5–12, 123:4–

[3] Some Florida District Courts of Appeal also require a plaintiff to allege that a defendant's fraudulent or improper use of the corporate form caused the plaintiff's injury. *See, e.g.*, *Parisi*, 314 So. 3d at 664. Because Tess has not shown that Springfield Holdings fraudulently or improperly used the corporate form, I need not predict whether the Supreme Court of Florida would adopt this prong. *See Pearce v. State Farm Florida Ins. Co.*, No. 23-14081, 2026 WL 1078129, at *8 (11th Cir. Apr. 21, 2026) (per curiam) (declining to "resolve the precise contours of Florida law on this issue" because the plaintiffs' allegations were insufficient); *Royal Palm Village Residents, Inc. v. Slider*, 57 F.4th 960, 970 (11th Cir. 2023) (Newsom, J., concurring in the judgment) (explaining the circumstances under which an "*Erie* guess" is necessary).

22). It also shows that Springfield Holdings does not maintain separate bank accounts, make separate corporate filings or tax returns, or receive dividends or distributions from Springfield even though it is Springfield's sole shareholder, *id.* at 61:14–62:15, and that Springfield has repeatedly represented in legal filings that "it has no parent corporation," *see* Exs. P, Q. Taken together, and construing all reasonable inferences in Tess's favor, these facts are sufficient to show that Springfield controls Springfield Holdings. *See, e.g.*, *Bellairs*, 716 So. 2d at 323 (finding that the plaintiff made a prima facie showing that the defendant dominated and controlled a subsidiary). Critically, however, these facts fatally undercut any conventional alter-ego argument by destroying the inference that Springfield Holdings controls Springfield.

Second, Tess has not shown that Springfield Holdings was formed or used for a fraudulent or improper purpose. Tess asserts that Springfield Holdings exists for the "sole and improper purpose" of allowing Springfield "to obtain an extensive line of credit from its lenders" and was created because Springfield's "lenders required complete collateralization of all the assets, interests, and operations of" Springfield. Pl.'s Suppl. Br. at 7. Tess further argues that "the Springfield Holdings shell was formed to hold all the equity in [Springfield]," to guarantee a loan for Springfield, and to insulate Springfield and Springfield Holdings' common beneficial owners from potential liability. *Id.* at 7–8. The record supports Tess's assertions that Springfield

Holdings was formed to reassure lenders, obtain credit, and hold equity. *See* Bowen Dep. 41:11–43:18, 45:20–46:16, 93:12–94:12; Ex. N (Doc. 60-4) at 1. But these purposes are not fraudulent or improper.

There must be "proof of deliberate misuse of the corporate form—tantamount to fraud"—to justify piercing the corporate veil. *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 303 F. Supp. 3d 1282, 1286 (M.D. Fla. 2018) (quoting *In re Hillsborough Holding Corp.*, 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994)) (emphasis removed)); *see Conant v. Blount*, 192 So. 481, 484–85 (Fla. 1939) ("[T]here is no need to pierce the corporate veil when indications of fraud or ulterior motive are lacking.")). "[E]vidence demonstrating an absence of corporate formalities, lack of equity capital, proof of domination and control, and that a corporation was used as [a] vehicle for personal interests is *not* 'the correct standard' to pierce the corporate veil." *Johnson*, 303 F. Supp. 3d at 1286 (quoting *Barkett v. Hardy*, 571 So. 2d 13, 14 (Fla. 2d DCA 1990)). Instead, the record must allow for the inference that " 'the corporation was a mere device or sham *to accomplish* some ulterior purpose, . . . or where *the purpose is to evade* some statute or *to accomplish* some fraud or illegal purpose, where the corporation *was employed* by the stockholders for fraudulent or misleading purposes, *was organized or used* to mislead creditors or to *perpetrate* a fraud upon them, or *to evade* existing personal liability." *In re Hillsborough Holdings Corp.*, 166 B.R. at 469 (quoting *Steinhardt v. Banks*,

511 So. 2d 336, 339 (Fla. 4th DCA 1987) (per curiam)). The record does not allow for any of these inferences. In fact, Tess's suggestion that Springfield Holdings was created to reassure creditors cuts against any suggestion that it was created to mislead or defraud them or to evade existing liabilities.

In sum, Florida law does not support exercising personal jurisdiction over Springfield Holdings based on Tess's allegations that it is controlled by another nonresident defendant. Even if it did, however, Tess cannot establish that Springfield Holdings was used for an improper purpose.

**iii. Agency**

The third and final basis for personal jurisdiction over a nonresident parent corporation requires a showing that "the subsidiary is merely an agent through which the parent company conducts business." *Classic Soft Trim*, 2020 WL 6734402 (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002)). To establish the requisite agency relationship, a plaintiff must allege: "(1) acknowledgment by the principal that the agent will act for [it], (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Id.* (quoting *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 n.10 (Fla. 2003)).

Tess does not allege that the subsidiary, Springfield, was merely an agent through which Springfield Holdings conducted business. To the

contrary, he alleges that "Springfield Holdings was . . . the agent of Defendant Springfield." Compl. ¶ 11–12. Agency theory therefore does not apply here.

* * *

Because I conclude that Springfield Guns and Springfield Holdings are not subject to personal jurisdiction under Florida's long-arm statute, I need not evaluate whether jurisdiction would otherwise be proper under the Due Process Clause of the Fourteenth Amendment. Similarly, I need not consider whether Springfield Guns has the capacity to be sued under Florida or Delaware law.[4]

## IV. CONCLUSION

Springfield Guns is not subject to personal jurisdiction because it has not engaged in the firearm business since 1992 and ceased to exist before the pistol's alleged manufacture date. Springfield Holdings is not subject to personal jurisdiction because it has no operations and conducts no business. More, Springfield Holdings is not subject to alter-ego jurisdiction because there is no support for Tess's novel reverse alter-ego theory.

Accordingly, the following is **ORDERED**:

---

[4] Tess requests leave to amend his complaint if I deem it deficient. Pl.'s Suppl. Br. at 8. This request is not properly before the Court. *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade County, Fla.*, 48 F.4th 1222, 1236 (11th Cir. 2022) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (citation omitted)). In any event, this order is not based on deficient pleadings, and amendment would be futile.

1. Springfield Guns' and Springfield Holdings' Motions to Dismiss (Docs. 12, 13) are **GRANTED**.

2. All counts are **DISMISSED without prejudice** as to defendants Springfield Guns and Springfield Holdings for lack of personal jurisdiction.

3. The Clerk is directed to **TERMINATE** defendants Springfield Guns and Springfield Holdings from this action.

**ORDERED** in Tampa, Florida, September 30, 2026.

Kathryn Kimball Mizelle
United States District Judge